IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| REPRESENTATIVE RONNY JACKSON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> SHIRLEY N. WEBER, *et al.*, <br><br> Defendants. | 2:25-CV-236-Z |

**ORDER**

Before the Court are three motions, all filed October 30, 2025: (1) Plaintiffs' Motion for Preliminary Injunction (ECF No. 6); (2) Plaintiffs' Motion for Leave to Exceed Page Limits (ECF No. 7); and (3) Plaintiffs' Motion to Convene a Three Judge Panel (ECF No. 8). After reviewing the briefing and relevant law, and for the reasons stated below, Plaintiffs' Motions are all **DENIED**. Further, Plaintiffs' claims are *sua sponte* **DISMISSED without prejudice** for lack of standing.

**BACKGROUND**

Plaintiffs United States Representative Ronny Jackson[1] and Representative Darrell Issa[2] seek a preliminary injunction to prevent the enforcement of California's Election

---

[1] Jackson represents Texas's 13th Congressional District in the U.S. House of Representatives and currently serves as Chairman of two House subcommittees: the Subcommittee on Oversight and Investigations of the House Permanent Select Committee on Intelligence, and the Subcommittee on Intelligence and Special Operations of the House Armed Services Committee. *See* ECF No. 6 at 11, 36.

[2] Issa represents California's 48th Congressional District in the U.S. House of Representatives and currently serves as Vice Chair of the Committee on Foreign Affairs. He also serves as Chairman of the Subcommittee on Intellectual Property, Artificial Intelligence, and the Internet on the Committee on Judiciary. ECF No. 1 at 3.

Rigging Response Act (the "ERRA"). ECF No. 6 at 7. On November 4, 2025, pursuant to the ERRA, California will conduct a statewide special election concerning Proposition 50—a "legislatively referred constitutional amendment" to the state's constitution. *Id.* Plaintiff contends that the "California Constitution, not the Legislature, is tasked with adjusting the boundaries of congressional, Senate, Assembly, and State Board of Equalization districts once every decade, in the year following the national census." *Id.* Thus, Proposition 50 would "temporarily override the Commission's authority regarding congressional districts." *Id.* Accordingly, Plaintiff argues that the ERRA (1) violates 42 U.S.C. Section 1983 and the Fourteenth Amendment by "depriving Plaintiff Darrell Issa of his vote being counted equally after redistricting, consistent with equal protection"; (2) violates the Elections Clause "by usurping power that the California Legislature does not lawfully possess under its own state constitution"; and (3) violates the Guarantee Clause by "sabotaging fundamental principles of republican government." *Id.* Plaintiff asks this Court to preliminarily enjoin Defendants from "placing Proposition 50 on the ballot and otherwise implementing the ERRA." *Id.* at 8.

This case follows shortly on the heels of a nearly identical case and request for preliminary injunctive relief. There, Representative Ronny Jackson also sued Defendants Shirley N. Weber and Gavin Newsom in their official capacities, raising nearly—if not exactly—identical challenges to the ERRA. *See Jackson v. Weber*, No. 2:25-CV-197, 2025 WL 2986057, at *5 (N.D. Tex. Oct. 23, 2025) ("Plaintiff asks this Court to enjoin Defendants from placing Proposition 50 on the ballot and otherwise implementing the ERRA." (internal marks omitted)). This Court denied Plaintiff Jackson's motion for a temporary restraining order and preliminary injunction and ultimately dismissed the action, as Plaintiff did not have standing to challenge a California redistricting law as a United States Congressman. *Id.* ("Plaintiff lacks standing to challenge the ERRA and Proposition 50."). Now, Representative Jackson

returns and joins Darrell Issa, the representative for California's 48th Congressional District, in an attempt to renew his earlier challenge.

### LEGAL STANDARD

Federal courts have an equitable power to issue preliminary injunctions under Federal Rule of Civil Procedure 65. A preliminary injunction is an extraordinary remedy requiring the movant to unequivocally show it is entitled to the relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "Its purpose 'is merely to preserve the relative positions of the parties until a trial on the merits can be held.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). To obtain one, the movant must show four factors:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Id.* The first factor is "the most important." *Mock v. Garland*, 75 F.4th 563, 587 n.50 (5th Cir. 2023). But no factor has a "fixed quantitative value." *Id.* at 587. On the contrary, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* However, "[a] preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Green*, 553 U.S. 674, 689 (2008) (internal citations and quotations omitted). The "decision to grant or deny [relief] lies within the sound discretion of the trial court." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989).

### ANALYSIS

#### I. Standing

Before turning to the question of whether a preliminary injunction is warranted in the instant case, the Court begins by addressing the threshold issue of standing. Article III of the Constitution limits the federal "judicial Power" to "Cases" and "Controversies." U.S.

CONST. art. III, § 2. "One element of the case-or-controversy requirement is that [plaintiffs], based on their complaint, must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Like many other jurisdictional requirements, this standing requirement cannot be waived. *See Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996). Thus, it must be addressed at the outset of the case.

A plaintiff must therefore establish standing before a court may grant a preliminary injunction. *See Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020). To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *La Union Del Pueblo Entero v. Abbott*, 151 F.4th 273, 285 (5th Cir. 2025) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "An injury in fact is 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified)). This is the "'[f]irst and foremost' of standing's three elements." *Spokeo*, 578 U.S. at 338–89 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). "The second and third requirements, causation and redressability, are usually 'flip sides of the same coin.'" *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. ----, 145 S. Ct. 2121, 2133 (2025) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024)); *see also Murthy v. Missouri*, 603 U.S. 48, 97 (2024) (Alito, J., dissenting) ("If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." (citation modified)). "Causation requires the plaintiff to show 'that the injury was likely caused by the defendant,' and redressability requires the plaintiff to demonstrate 'that the injury would likely be redressed by judicial relief.'" *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 418, 423 (2021)). Far from being "an

ingenious academic exercise in the conceivable," the standing inquiry requires the plaintiff to make "a factual showing of perceptible harm." *Lujan*, 504 U.S. at 566 (quoting *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, 412 U.S. 669, 688 (1973)).

### A. Injury-in-Fact

Plaintiffs allege "dual" injuries as legislators and voters. ECF No. 1 at 3. First, they claim they will each suffer harm in their representational capacities. *Id.* at 2. They assert an injury "as individual Members of Congress whose ability to represent their constituents will be directly and immediately impaired." *Id.* But Plaintiffs do not rely solely on their status as legislators. They further contend they will suffer injury as individuals "whose own votes will be diluted by California's unconstitutional redistricting scheme." *Id.* Thus, Plaintiffs assert standing first as legislators, second as voters. The Court addresses each argument in turn.

#### 1. Legislator Standing

The Supreme Court has recognized few circumstances in which legislators may sue in their representational capacity. In *Powell v. McCormack*, the Court allowed a congressman to sue the Speaker of the House and others after they passed a resolution specifically barring him from taking his seat. 395 U.S. 486, 489 (1969). And in *Coleman v. Miller*, the Supreme Court found state legislators had standing to sue when they alleged a Lieutenant Governor's action ratifying an amendment deprived their vote against ratification of its effect. 307 U.S. 433, 36–37 (1939). But the Court significantly narrowed legislator standing in *Raines v. Byrd*. 521 U.S. at 821. There, the Supreme Court clarified its earlier decisions, limiting *Powell*'s holding to cases where a legislator receives "specially unfavorable treatment" relative to other members of Congress. *Id. Raines* also characterized *Coleman* as being limited to cases in which legislators' votes are "deprived of all validity." *Id.* at 822. Post-*Raines*, legislators may not sue in their representative capacity when the asserted harm amounts only to "a loss

of political power, not loss of any private right, which would make the injury more concrete." *Id.* at 821. Nor can they sue for a loss of voting power unless the challenged event renders their vote completely ineffective. *Id.* at 822.

Here, Plaintiffs essentially claim they will lose "political power," not any "private right." *Id.* Plaintiff Jackson argues that if "Democrats take control of the House in January 2027, [he] will immediately and automatically lose" his chairmanship positions on two subcommittees, as well as the resources attending those positions and a House majority seat. ECF No. 1 at 13. These are trappings of "political power," not private entitlements. Nor do the anticipated losses deprive Plaintiff of his vote as a Member of Congress. Under *Raines*, these are not Article III injuries. *See* 521 U.S. at 821–22.

The Court previously addressed Representative Jackson's standing to challenge the California election in its Order dismissing his prior action. *See generally Jackson*, 2025 WL 2986057. There, the Court held *Raines v. Byrd* "makes clear that Plaintiff's suit is not judicially cognizable." *Id.* at *4. Now, as then, this Court holds Representative Jackson does not have standing to bring this suit in his capacity as a legislator. Adding Plaintiff Representative Darrell Issa does not change this outcome.

Plaintiff Issa alleges that "[i]f Democrats take control of the House due to AB 604's implementation, Plaintiff Issa will lose" his "seniority advantages in committee proceedings," as well as suffer a reduced staff allocation, a weaker "[a]bility to shape committee agendas," and less "[p]riority access to witnesses, oversight materials, and legislative opportunities." Just as the injuries alleged by Plaintiff Jackson, these are articles of "political power," not "private right[s]." *Raines*, 521 U.S. at 821. Because he has alleged no loss of a personal entitlement, nor a complete deprivation of his vote's validity, Plaintiff Issa has not pled a cognizable injury in his representational capacity. *See id.* at 821–22.

### 2. *Voter Standing*

Plaintiffs also assert anticipated injuries as voters. At the outset, this Court notes Plaintiff Jackson is not a voter in any California district. *See* ECF No. 1 at 2. Rather, he "represents Texas's 13th Congressional District." *Id.* As a voter, then, Plaintiff Jackson will suffer no harm except that which every other voter in the United States shares equally. In other words, Plaintiff Jackson would hold a "generalized grievance," in no way particular to him. *See United States v. Richardson*, 418 U.S. 166, 176, 180 (1974); *Lujan*, 504 U.S. at 575. Plaintiff Jackson's generalized grievances are not Article III injuries. *Id.*

Plaintiff Issa, however, does vote in California. ECF No. 1 at 2. As a California voter, the state's redistricting would immediately affect him. Courts have recognized cognizable injuries flowing from certain dilutions of an individual's vote. *See Reynolds v. Sims*, 377 U.S. 533, 558 (1964). When population deviations of ten percent or more occur, redistricting presumptively violates the equal protection principle of "one person one vote." *See id.*; *Moore v. Itawamba Cnty.*, 431 F.3d 257 (5th Cir. 2005). But deviations below that level are often permitted, as the "plaintiff must prove that the redistricting process was tainted by arbitrariness or discrimination." *Moore*, 431 F.3d at 258.

Here, Plaintiffs pay lip-service to the "one person one vote," rule but allege no facts supporting a violation thereof. *See* ECF No. 1 at 6. Instead, they barely assert the redistricting will use "stale" data and result in "unequal distribution of people across district lines," even though Plaintiffs admit "AB 604's districts deviate from [the 2020 Census data] ideal by no more than one person." *Id.* at 9–10. Without more, Plaintiff Issa has not alleged an illegal dilution of his vote. In other words, he has not alleged an injury-in-fact.

Courts have also recognized cognizable injuries flowing from racially classified or motivated redistricting. *See generally, e.g., Miller v. Johnson*, 515 U.S. 900 (1995); *Shaw v.*

7

*Reno*, 509 U.S. 630 (1993). Instead of racial motivations, here Plaintiffs complain of political motivations. Plaintiff Issa argues his "vote will be manipulated for partisan advantage." ECF No. 1 at 17. This is a political gerrymandering claim—asserting not that Plaintiff Issa's vote will hold less quantitative weight, but that the political effects will favor one party. Indeed, "[p]artisan gerrymandering is nothing new. Nor is frustration with it." *Rucho v. Common Cause*, 588 U.S. 684, 696 (2019).

Even if Plaintiffs present valid frustrations, having one's district politically gerrymandered does not constitute a justiciable injury. *Id.* at 707. "Partisan gerrymandering invariably sounds in a desire for proportional representation." *Id.* at 704. But judicial precedents "clearly foreclose any claim that the Constitution requires proportional representation or that legislatures in reapportioning must draw district lines to come as near as possible to allocating seats to the contending parties in proportion to what their anticipated statewide vote will be." *Id.* at 704–05 (internal quotations omitted). Because the "Framers were aware of electoral districting problems" and yet "settled on . . . assigning the issue to the state legislatures, expressly checked and balanced by the Federal Congress," any holding "that legislators cannot take partisan interests into account when drawing district lines would essentially countermand [their] decision to entrust districting to political entities." *Id.* at 699, 701. In summary, the Founders and the Supreme Court understood something akin to gerrymandering would emerge as an inevitable, political "spoil of war" beyond the reach of the Judiciary.

Even disregarding the Founders' intentions, creating workable standards for adjudicating such disputes would involve "questions that are political, not legal," and therefore "beyond the competence of the federal courts." *Id.* at 707. Simply put, political gerrymandering disputes present questions beyond this Court's jurisdiction.

Plaintiff Issa's claims that his vote is politically diluted cannot, therefore, give rise to a cognizable injury. And to the extent Plaintiffs rely on a broader injury, extending "to the statewide harm to their interest in their collective representation in the legislature, and in influencing the legislature's overall composition and policymaking," this also fails. *Gill v. Whitford*, 585 U.S. 48, 50 (2018) (internal quotations omitted). The Supreme Court's "cases to date have not found that this presents an individual and personal injury of the kind required for Article III standing." *Id.* at 68.

For the foregoing reasons, Plaintiffs have alleged no cognizable injury-in-fact supporting their standing to sue.

### B. Causation

Just as before, Plaintiffs' asserted injuries are too attenuated from California's passage of the ERRA to establish causation. Plaintiffs write that if this Court does not enjoin California's upcoming special election, California's new legislative districts "*will* cause the U.S. House of Representatives to shift from its Republican majority to a Democrat majority by the term beginning in 2027." ECF No. 6 at 5 (emphasis added). More accurately, California's approval of Proposition 50 *could or may* cause such a result. As this Court has previously stated, "Plaintiffs claims depend on all of the following occurring: California voters approving Proposition 50 in November 2025; California voters turning out for Democrats in overwhelming numbers in November 2026; that overwhelming turnout resulting in Californians electing more Democrats to the U.S. House than they already do; and voters nationwide electing precisely the right number of Democrats, such that the entire U.S. House turns blue because of the seats California Democrats may flip in the 2026 midterms." *Jackson*, 2025 WL 2986057, at *5.

This is not a "manufactured litany of hypotheticals." ECF No. 6 at 17. Rather, the Court merely takes Plaintiffs' arguments to their logical conclusions, demonstrating a situation that is far too speculative to show causation. Plaintiffs' own hypothetical—asking the Court to consider California imposing tariffs on Texas businesses—actually underscores why causation is lacking. There, the causal link between the state's action and the plaintiff's injury is clear and concrete: tariffs directly increase the cost of doing business for the affected entities. By contrast, Plaintiffs' alleged injuries depend on a speculative chain of events involving independent actors, unpredictable voter behavior, and uncertain political outcomes. Unlike tariffs, the purported "retaliatory measures" here merely assert a generalized grievance about how elections are administered. Such attenuated and conjectural claims fall far short of establishing causation sufficient for standing. *See, e.g., Clapper*, 568 U.S. at 414 (no causation where the plaintiffs' claim rested on a "speculative chain of possibilities"); *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) ("[S]peculation does not suffice."); *Whitmore v. Arkansas*, 495 U.S. 149, 157 (1990) ("Petitioner's alleged injury is too speculative to invoke the jurisdiction of an Art. III court."); *Allen v. Wright*, 468 U.S. 737, 759 (1984) (no standing where the "links in the chain of causation between the challenged Government conduct and the asserted injury" were "far too weak"); *Murthy*, 603 U.S. at 57 (finding no standing because of the "one-step-removed, anticipatory nature" of the plaintiffs' alleged injuries).

### C. Redressability

Causation and redressability are "flip sides of the same coin." *Diamond Alt. Energy*, 145 S. Ct. at 2133 (quoting *All. for Hippocratic Med.*, 602 U.S. at 379). Thus, if causation is satisfied, so is redressability. But causation is not satisfied. Plaintiffs failed to show that California's approval of the ERRA will likely cause them to suffer a legally cognizable injury.

It follows that enjoining California's upcoming special election would not redress any injury Plaintiffs may suffer.

Moreover, the Supreme Court recently rejected a voter-challenge to a redistricting effort in *Gill v. Whitford*, 585 U.S. 48 (2018). Citing redressability concerns, the Court noted that even in racial gerrymandering cases, plaintiffs "cannot sue to invalidate the whole State's legislative districting map; such complaints must proceed 'district by district.'" *Id.* (quoting *Ala. Black Caucus v. Alabama*, 575 U.S. 254, 262 (2015)). Just as in that case, Representative Issa's anticipated injury is the political dilution of his vote. *See id.* at 67 ("Here, the plaintiff's partisan gerrymandering claims turn on allegations that their votes have been diluted."); ECF No. 1 at 17 (asserting Issa's "vote will be diluted" and "manipulated for partisan advantage"). Representative Issa is a citizen of a single district. Any dilution of his individual vote occurs within that district. So, even if his claim is justiciable, enjoining a statewide election likely exceeds the redress of his injury.

An injury as an individual voter does not warrant enjoining a statewide election. And, to the extent Plaintiffs rely on a broader injury, extending "to the statewide harm to their interest in their collective representation in the legislature, and in influencing the legislature's overall composition and policymaking," this also fails. *Gill*, 585 U.S. at 68. The Supreme Court's "cases to date have not found that this presents an individual and personal injury of the kind required for Article III standing." *Id.* Therefore, that broader harm could not support redressability because it is not justiciable in the first place.

## II. Additional Procedural Concerns

It is worth noting that even if Plaintiffs *did* have standing—they do not—and the Court proceeded to analyze Plaintiffs' likelihood of success on the merits, this lawsuit would not survive a venue challenge. 28 U.S.C. Section 1391 governs "the venue of all civil actions"

11

in district courts. 28 U.S.C. § 1391(a)(1). Venue is proper if one of three conditions is met. First, if the civil action is brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." *Id.* § 1391(b)(1). Second, if Plaintiff brings suit in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." *Id.* § 1391(b)(2). Third, the action can proceed in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action," but only if "there is no district in which an action may otherwise be brought as provided in this section." *Id.* § 1391(b)(3).

Here, Plaintiffs state both Defendants are citizens of California. ECF No. 1 at 3. Therefore, no defendant resides in this judicial district, and venue is not proper under Section 1391(b)(1). Consider also the facts of this case. The challenged election is a California election. The ERRA is a California state bill which "the California Legislature passed and Defendant Newsom signed into law." *Id.* at 5. Proposition 50 will be approved or declined by "California voters." *Id.* at 8. Any nonspeculative effects of that action will likely occur in California. The relevant facts of this case, then, bear little to no relationship to the Northern District of Texas. California's reference to Texas's redistricting as a political motivator does not constitute "a substantial part of the events or omissions" in this case. 28 U.S.C. § 1391(b)(2); *see* ECF No. 1 at 6. Therefore, Plaintiffs have not shown that venue is proper under Section 1391(b)(2). And, for the same reasons previously stated, Plaintiff could satisfy the venue requirements in California under either Section 1391(b)(1) or 1391(b)(2). Since there exists another district in which Plaintiff can bring this action, venue is not proper under Section 1391(b)(3).

### III. Request for a Three-Judge Panel

In addition to their Motion for Preliminary Injunctive Relief, Plaintiffs request the Court to convene a three-judge district court panel pursuant to 28 U.S.C. Section 2284(a) to "hear and determine this action." ECF No. 8 at 1.

28 U.S.C. Section 2284 provides that "[a] district court of three judges shall be convened when . . . an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). Section 2284 continues, stating that "[u]pon the filing of a request for three judges, the judge to whom the request is presented shall, *unless he determines that three judges are not required*, immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge." 28 U.S.C. § 2284(b)(1) (emphasis added).

Although Plaintiffs "challenge[] the constitutionality of California's apportionment of congressional districts on multiple grounds," ECF No. 8 at 2, a single district court judge may determine that "three judges are not required" if the party seeking relief lacks standing. To be sure, the Supreme Court has held that a "three-judge court is not required where the district court itself lacks jurisdiction [over] the complaint or the complaint is not justiciable in the federal courts." *Shapiro v. McManus*, 577 U.S. 39, 44–45 (2015) (quoting *Gonzalez v. Automatic Emp. Credit Union*, 419 U.S. 90, 100 (1974)). And because a case is not justiciable in federal courts when the plaintiff lacks standing, the absence of standing is a "ground upon which a single judge [may] decline[ ] to convene a three-judge court." *See Gonzalez*, 419 U.S. at 100; *see also Bone Shirt v. Hazeltine*, 444 F. Supp. 2d 992 (D.S.D. 2005) ("[A] court has jurisdiction to dispose of the matter without convening a three-judge district court."); *Giles v. Ashcroft*, 193 F. Supp.2d 258, 262 (D.D.C. 2002) ("An individual district court judge may consider threshold jurisdictional challenges before convening a three-judge panel."); *Sharrow*

*v. Fish*, 501 F. Supp. 202, 205 (S.D.N.Y. 1980) ("[H]aving determined that plaintiff lacks standing and thus presents no substantial claim, the Court finds that the convening of a three-judge court is not warranted . . . ."). Just so here. Plaintiffs lack standing and, thus, convening a three-judge court is neither necessary nor mandatory.

CONCLUSION

For the foregoing reasons, Plaintiffs' Motions (ECF Nos. 6, 7, 8) are all **DENIED**. Because Plaintiffs do not have standing to sue, this Court lacks subject-matter jurisdiction and must also dismiss. *See* FED. R. CIV. P. 12(h)(3). Accordingly, it is further **ORDERED** that Plaintiffs' claims are *sua sponte* **DISMISSED without prejudice** for lack of standing.

**SO ORDERED**.

October 31, 2025

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE